IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRINITY SOBER LIVING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   19 C 7321 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| VILLAGE OF HINSDALE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   20 C 6959 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| VILLAGE OF HINSDALE, | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER**

In these related cases, plaintiffs Trinity Sober Living LLC ("TSL") and the United States

of America have brought separate complaints against defendant Village of Hinsdale, challenging

the Village's attempts to enforce its zoning regulations to prevent TSL from opening a group

home in a residential area within the Village.   TSL has brought a two count complaint alleging

discrimination under the Fair Housing Act, 42 U.S.C. §3601 et seq. ("FHA") in Count I, and

under the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq. ("ADA") in Count II.

The United States' complaint asserts one count for violating the FHA.   The Village has moved

to dismiss each complaint under Fed. R. Civ. P. for failure to state a claim.   For the reasons

described below, both motions are denied.

## BACKGROUND[1]

TSL assists persons who are in recovery from alcoholism or drug addiction to achieve and maintain sobriety.   It was founded in 2019 by Michael Owens, and is located on Grant Street in the Village's business district.   On June 16, 2019, TSL purchased a five bedroom, 4000 square foot house located at 111 Grant Street in the Village, a short walk from its office.   The intent was to use the home for a sober living facility for up to ten unrelated persons in recovery from alcoholism or drug addiction.   The home began operating on July 27, 2019, with one resident and a live-in house manager.   According to the government's complaint, the home served between nine and ten residents in recovery from alcoholism or drug addiction from approximately November 2019 until the end of October 2020, when TSL sold the house and moved the residents to another sober living home in another town.   The government alleges that TSL wants to open another sober living facility within the Village.

The TSL home in Hinsdale is in an area zoned as single-family residential.   Under the Hinsdale zoning code, "family" is defined as "one or more persons related by blood, marriage, legal adoption or guardianship, or not more than three (3) persons not so related, together with gratuitous guests and domestic servants, living together as a single housekeeping unit."   The zoning code allows "traditional service facilities" defined as an "authorized and licensed dwelling operated by a public or private agency duly authorized by any state agency . . . that houses individuals being cared for by that agency and deemed by the agency to be capable of living and functioning in the community and that provides professional guidance."   Such

---

1  The background facts are taken largely from the United States' complaint, which is more detailed than TSL's complaint.   To the extent that the difference in factual detail is relevant to the pending motions, it is addressed in this opinion.

facilities are allowed only in multi-family zoned districts, only pursuant to a special use permit, and are limited to six residents.

On July 13, 2019, a resident of Hinsdale emailed the Village President, Thomas Cauley, stating that "men dealing with drug and alcohol addiction" would be living at the 111 Grant Street house, and that the neighbors were worried about people with those issues living in the neighborhood. Other neighbors had approached Owens at the house to express their concern, and at least one neighbor accused Owens of bringing "alcoholics, drug addicts, and pedophiles into our neighborhood."

Cauley wrote to Owens on July 18, 2019, indicating that he had learned that TSL had purchased the Grant Street property and intended to use it as a facility where ten unrelated people would reside. He informed Owens that such was a "prohibited use" and would not qualify as a special use. On July 30, Owens met with the Village Planning Director, the Assistant Village Manager, the Public Safety Director, and Lance Malina, the Village Attorney. At that time the home had only one resident. At the close of the meeting, Malina suggested that TSL request a reasonable accommodation and referred to the Village's reasonable accommodation process.

In a follow-up exchange email with Malina, Owens inquired whether TSL would be complying with the zoning code if it limited the house to three residents. Malina responded that "commercial uses" are not permitted in the R-4 (single-family) district and that the Village considered TSL's use of the house ancillary to its addiction treatment center located in the Village's business district being marketed commercially.

On August 4, 2019, the Village convened a meeting of its residents to "share with the residents the actions that the Village has taken and intends to take with respect to" the home.

TSL was not invited to the meeting. The Village did not inform the residents that TSL was expected to request a reasonable accommodation.

The following day, Cauley sent a letter addressed "Dear Residents" indicating that the Village was "prepared to take any and all actions necessary to enforce the Village's zoning code, under which this proposed use is not permitted." Two days later, on August 7, Steve Polin, TSL's lawyer, sent Malina a nine page email letter, requesting a reasonable accommodation pursuant to the FHA on behalf of TSL and its prospective residents, the owner of the property, and its current residents. The requested accommodation was a waiver of the number of unrelated persons that can reside together as a family, and to treat the use of the home as a single-family use. The Village did not forward that request to the Board of Trustees. Instead, on the following day it filed a lawsuit against TSL in the state court seeking to enforce its zoning code. The lawsuit asserted that even though the home currently had fewer than three unrelated residents, it was in violation of the zoning code because it was a commercial use. The Village sought a declaration that the home violated the zoning code and fines for each day the home was operating. The Village also moved for a preliminary injunction requiring TSL to cease all commercial use of the property.

On August 12, after the Village filed the state court suit, Malina responded to Polin's August 7 letter by requesting certain information about TSL's operations. TSL supplied the requested information by October 31, 2019, but the Village never responded further, nor did it refer the accommodation request to the Board of Trustees.

On November 6, 2019, TSL filed its instant action (19 c 7321). On October 29, 2020, the Village received notice that the United States was taking the position that the zoning code

4

discriminated against persons with disabilities by prohibiting homes of any size as "commercial" land uses.   As a result of that letter, the Village has indicated that it was withdrawing its position that TSL's use of the home was a violation of the code as a "commercial use" regardless of the number of residents.   Its "reconsidered position" is that TSL's use violated the zoning code solely because it planned to lodge and did lodge more than three unrelated persons.

## DISCUSSION

The Village has moved under Fed. R. Civ. P. 12(b)(6) to dismiss both complaints brought against it.   To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."   Bell. Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   That said, when considering a motion to dismiss, the court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to plaintiff."   Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013).   At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion."   McReynolds v. Merrill Lynch & Co., Inc., 694 F.3d 873, 885 (7th Cir. 2012) (citing Iqbal, 556 U.S. at 678).

The FHA was passed in 1968 to "provide, within constitutional limits, for fair housing throughout the United States."   42 U.S.C. § 3601.   It originally protected against discrimination based on race, color, religion, or national origin only, but the Fair Housing Amendment Act of 1988 extended its protections to persons with disabilities.   Valencia v. City of Springfield, Ill., 883 F.3d 959, 966 (7th Cir. 2018).   The FHA makes it unlawful to "discriminate in the sale or

rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a [disability]." Id. (quoting 42 U.S.C. § 3604(f)(1)). Title II of the ADA similarly provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits or services, programs, or activities of a public entity, or be subject to discrimination by any such entity." Id. at 966-67 (quoting 42 U.S.C. §12132).

Both statutes apply to municipal zoning decisions. Id. at 967. A plaintiff may prove a violation of the FHA or ADA by showing: 1) disparate treatment; 2) disparate impact; or 3) a refusal to make a reasonable accommodation. Id. The analysis the same under each statute for each theory of liability. Id.

TSL's complaint (19 c 7321) alleges discrimination and retaliation under the FHA (Count I) and discrimination under the ADA (Count II). The Village first argues that the complaint contains no specific factual allegations to plausibly support a disparate treatment claim. In response TSl agrees that it is "not making a claim for disparate treatment based on a facially discriminatory government practice at this time."

Next, the Village challenges TSL's claim of retaliation, which is based on the Village's filing of the state court action to enforce its zoning code. The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by [the FHA]." 42 U.S.C. § 3617. To state a claim under this section, TSL must allege that: 1) it is protected under the FHA; 2) it was engaged in the exercise or enjoyment of its fair housing rights; 3) the Village coerced, threaten, intimidated, or interfered with TSL on account of its protected activity under the FHA; and 4) the Village was motivated by an intent to discriminate. Bloch v. Frischolz, 587 F.3d 771, 782 (7th Cir. 2009).

The Village argues that TSL's complaint contains no factual allegations to support its general claim that the Village intended to discriminate.   TSL's complaint is not nearly as detailed as the government's complaint.   For example, TSL's complaint lacks any of the details about the residents' complaints to the Village or to Owens.   According to the Village, all the complaint alleges is that it sued TSL to enforce a neutral zoning code provision.   Nonetheless, the complaint does allege that Polin's August 7 letter advised the Village that TSL's residents were protected under the FHA and ADA, and any attempt to enforce its zoning code against TSL would be unlawful discrimination.   The Village filed suit the next day.   This allegation is sufficient to plausibly infer that the Village was determined to prevent a home for persons with disabilities   (recovering "drug addicts" and alcoholics) from moving into the neighborhood.

The Village also argues that the Noerr-Pennington doctrine, which protects litigation, lobbying, and speech, bars TSL's retaliation claim.   See New West, L.P. v. City of Joliet, 491 F.3d 717, 722 (7th Cir. 2007).   Noerr-Pennington provides absolute immunity for statutory liability when petitioning the government for redress.   SoCal Recovery, LLC v. City of Costa Mesa, 2019 WL 8194727 at * 12 (C.D. Cal. August 30, 2019).   There is, however, an exception for conduct that is a mere sham to cover what is an attempt to interfere with a defendant's rights. Id.   In the instant case, the are no allegations to suggest that the state court lawsuit was a sham, or that its allegations were frivolous or objectively baseless.   Id.   Consequently, the court agrees that TSL's complaint fails to state a claim for retaliation and grants the motion to dismiss that claim.

This leads to what the court considers to be the crux of TSL's complaint—its claim that the Village failed to make a reasonable accommodation to afford TSL and its residents to an

7

equal opportunity to use and enjoy the home.   According to the Village, TSL has not alleged

that it actually made a request for an accommodation and, as a result, was never refused.

Arguing that TSL was required to seek a special use permit or a zoning variance before it

purchased the house or began operation, the Village relies on <u>Schwarz v. City Treasure Island</u>,

544 F.3d 1201, 1219 (11th Cir. 2008), which it describes as holding that "if there is a local

procedure (such as a variance process) through which the plaintiffs can obtain the

accommodations they want, they must use that procedure first and come away unsatisfied prior

to filing suit in federal court."   That is generally true but, as stated in <u>U.S. v. Village of Palatine,</u>

<u>Ill.</u>, 37 F.3d 1230, 1234 (7th Cir. 1994) (emphasis added), "where plaintiff's sole argument is that

the Village failed to make a reasonable accommodation under the Act, the Village must be

afforded an opportunity to make such an accommodation pursuant to its own lawful

procedures—<u>unless it is clear that the result of such procedures is foredoomed</u>, . . .—before

plaintiff will have a ripe claim."

In the instant case, TSL has alleged that it requested an accommodation, and that rather

than respond by telling TSL to apply for a variance or special use permit (it in fact told TSL that

such a permit was not available), or to attempt to negotiate a reasonable solution, it immediately

filed suit to enforce the very zoning provision from which TSL sought an accommodation.   Nor

did the Village refer TSL's request to the Board of Trustees as the government alleges the

Village has done in the past when faced with a request for an accommodation.   Under theses

circumstance it was reasonable for TSL to conclude that any such request was doomed from the

start.   Consequently, as a result, the court concludes that TSL's complaint states a claim for

failing to make a reasonable accommodation, and the Village's motion to dismiss on that ground is denied.

The analysis above applies equally to the Village's motion to dismiss the government's complaint (20 c 6959).     The Village argues that the government's suit is moot because TSL voluntarily moved out of the Village before the suit was filed, but the government alleges that TSL wants to return and is likely to be subject to the same alleged discrimination.   The Village also argues that the government's position is in direct contrast to a provision is a Joint Statement by the United States Department of Housing and Urban development issued in November 2016 (State and Local Land Use Laws and Practices and the Application of the Fair Housing Act at 10 (Nov. 10, 2016), available at https://www.justice.gov/opa/file/912366/download ("Joint Statement")) that provides that any local government:

> May generally restrict the ability of groups of unrelated persons to live together without violating the [FHA] as long as the restrictions are imposed on all such groups, including a group defined as a family.   Thus, if the definition of a family includes up to a certain number of unrelated individuals, an ordinance would not, on its face, violate the Act if a group home for persons with disabilities with more than the permitted number for a family were not allowed to locate in a single-family-zoned neighborhood because any group of unrelated people without disabilities would also be denied.

That same provision also provides, however, that "because the Act prohibits the denial of reasonable accommodations to rules and policies for persons with disabilities, a group home that provides housing for a number of persons with disabilities that exceeds the number allowed under the family definition has the right to seek an exception or waiver.   If the criteria for a reasonable accommodation are met, the permit must be given in that instance, but the ordinance would not be invalid."   Id.

9

In the instant case, both complaints allege that TSL sought a reasonable accommodation and rather than assess that request, or inform TSL about how to follow the Village's procedures, the Village filed suit. The complaints allege adequately the denial of a reasonable accommodation. Whether the requested accommodation was required or reasonable is a fact specific inquiry not appropriate for resolution on motion to dismiss. See Valencia, 883 F.3d at 968. Consequently. The Village's motion to dismiss the government's complaint is denied.

## CONCLUSION

For the reasons described above, the Village of Hinsdale's motions to dismiss in cases 19-c-7321 [Doc. 53] and 20-c-6959 [Doc. 10] are denied, with the exception of TSL's claim for retaliation. The Village of Hinsdale is directed to answer the complaints by April 15, 2019. This matter is set for a telephonic status on April 27, 2019, at 9:45 a.m.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

**DATE: March 18, 2021**

10